Leo A. Vaisburg, Esq. (SBN 312414)
Amazon Suspension Lawyer
4148 Twilight Ridge
San Diego, CA 92130
Tel: (619) 373-6669
Email: leo@amazonsuspensionlawyer.com

Attorney for Plaintiff, FitTrack, Inc.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FitTrack, Inc., a Canadian corporation,<br><br>Plaintiff,<br><br>v.<br><br>Hyperzoo Technology Ltd., a UK entity; ShenZhen DingKa Technology Co., LTD, a Chinese entity; and Does 1-25,<br><br>Defendants. | Case No. **'23CV0838 H    BGS**<br><br>**COMPLAINT FOR:**<br><br>**(1) TRADEMARK INFRINGEMENT UNDER 15 U.S.C. §§ 1114 AND 1125(a);**<br>**(2) TRADEMARK DILUTION UNDER 15 U.S.C § 1125(c);**<br>**(3) UNFAIR COMPETITION AND FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a);**<br>**(4) UNFAIR COMPETITION AND FALSE ADVERTISING UNDER CAL. BUS. & PROF. CODE §§ 17200 AND 17500,** *ET SEQ;*<br>**(5) CONTRIBUTORY TRADEMARK INFRINGEMENT; AND**<br>**(6) VICARIOUS TRADEMARK INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

FitTrack, Inc. ("Plaintiff") complains and alleges against Hyperzoo Technology Ltd., a UK entity, ShenZhen DingKa Technology Co., LTD, a Chinese entity; and Does 1-25 (collectively, "Defendants") as follows:

## THE PARTIES

1. Plaintiff is a Canadian corporation with its principal place of business at 38 Alexandra Wood, North York, Ontario, M5N2S1. Plaintiff is the owner of the "FitTrack" trademark (USPTO Registration No. 5934408).

2. On information and belief, Defendant Hyperzoo Technology Ltd. is an entity organized under the laws of the United Kingdom. Hyperzoo Technology Ltd. owns and operates a virtual storefront on Amazon.com called "Hyperzoo." Its storefront is located at

1  https://www.amazon.com/s?me=A2U3WPAZ49T6TO&marketplaceID=ATVPDKIKX0DER. Its Amazon Seller ID is A2U3WPAZ49T6TO.

3. On information and belief, Defendant ShenZhen DingKa Technology Co., LTD is an entity organized under the laws of China. ShenZhen DingKa Technology Co., LTD owns and operates a virtual storefront on Amazon.com called "DinKa-Inc&US." Its storefront is located at https://www.amazon.com/s?me=A28TSKEQ3FWBKD&marketplaceID=ATVPDKIKX0DER. It's Amazon Seller ID is A28TSKEQ3FWBKD.

4. Plaintiff is presently unaware of the true names of the Defendants identified in this Complaint under the fictitious names Does 1-25. On information and belief, Does 1-25, like the named Defendants, are trafficking counterfeit goods and unlawfully and unfairly using, without authorization, Plaintiff's "FitTrack" trademark in connection with websites, webstores, online advertising and e-commerce that promotes, markets and sells counterfeit versions of products bearing Plaintiff's trademark.

5. Defendants conduct their illegal operations through fully interactive webstores hosted on Amazon.com and other e-commerce platforms. Defendants target consumers in the United States, including the State of California, and have sold and continue to sell counterfeit products to consumers within the United States, including the State of California and the Southern District of California.

6. Through the operation of their webstores on Amazon and other e-commerce platforms, Defendants are directly and personally contributing to, inducing, and engaging in the sale of counterfeit products as alleged, often times as agents, partners, co-conspirators, and/or suppliers.

7. Upon information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell counterfeit products that infringe on Plaintiff's intellectual property rights.

## JURISDICTION AND VENUE

8. This Action arises under the federal trademark statute (the "Lanham Act"), 15 U.S.C. § 1051 *et seq*., and under the common law of the State of California. This Court has subject

matter jurisdiction over the federal trademark, false advertising, and unfair competition claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338 and 1367. This Court has subject matter jurisdiction over the related California state law claims pursuant to 28 U.S.C. §§ 1338 and 1367.

9. The amount in controversy exceeds $75,000.

10. Plaintiff is informed and believes, and on that basis alleges, this Court has personal jurisdiction because: (1) Defendants have extensive contacts with, and conduct business within the State of California and this judicial district; (2) Defendants have caused counterfeit products to be advertised, promoted, maintained, and sold in this judicial district; (3) the causes of action asserted in this Complaint arise out of Defendants' contacts with this judicial district and Defendants commercial activities with this judicial district; (4) Defendants have caused tortious injury to Plaintiff in this judicial district; and (5) Defendants are foreign entities who can be sued in any judicial district, including the Southern District of California.

11. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) because: (1) Defendants have extensive contacts with, and conduct business within, the State of California and this judicial district; (2) Defendants have caused Plaintiff's products to be advertised, promoted, maintained, and sold in this judicial district; (3) the causes of action asserted in this Complaint arise out of Defendants' contacts with this judicial district and Defendants commercial activities with this judicial district; (4) Defendants have caused tortious injury to Plaintiff in this judicial district; and (5) Defendants are foreign entities who can be sued in any judicial district, including the Southern District of California.

12. Venue is also proper in this judicial district because a substantial part of the counterfeit products manufactured, marketed and sold by Defendants are situated in this judicial district.

13. Defendants utilize Amazon's logistical and fulfillment capabilities (Fulfillment by Amazon or "FBA") to distribute counterfeit products nationwide. Defendants ship their counterfeit products to Amazon's regional fulfillment centers. Amazon warehouses and ships Defendants' counterfeit products to consumers within the geographic service area of the fulfillment center.

14. Defendants purposefully direct their activities to this judicial district by shipping their counterfeit products to Amazon's fulfillment center in San Diego, CA with the intent of selling counterfeit products to residents of this judicial district. Amazon stores Defendants' counterfeit products in its San Diego, CA fulfillment center, and ships Defendants' counterfeit products to consumers in this judicial district.

15. Defendants knowingly, intentionally, and purposefully ship their counterfeit products to Amazon's fulfillment center in San Diego, CA with the intent of selling counterfeit products to consumers in this judicial district. Defendants' intentional and illegal conduct is expressly aimed at consumers who reside in this judicial district. Defendants know the sale of their counterfeit products is likely to cause harm to consumers in this judicial district and is likely to cause harm to Plaintiff's trademark in this judicial district.

16. A substantial number of consumers previously received Defendants' counterfeit products, and a substantial number of counterfeit products are currently warehoused by Amazon in its fulfillment center in San Diego, CA for future sale to consumers in this judicial district. Defendants' counterfeit products are maintained by Amazon on behalf of, and for the benefit of Defendants. By utilizing Amazon's San Diego, CA fulfillment center to promote, store and sell counterfeit products, Defendants purposefully direct their activities towards consumers in this judicial district, and therefore avail themselves of the privileges associated with conducting commerce in this judicial district.

## FACTUAL BACKGROUND

**Plaintiff's Business and the FitTrack Trademark**

17. Plaintiff manufactures, markets, and sells a high-end scale called the FitTrack Dara Smart BMI Digital Scale (the "Dara"). Plaintiff sells the Dara exclusively direct-to-consumer through its website (www.getfittrack.com) and through its Amazon webstore. The Dara is assigned Amazon Standard Identification Number B07PYZ5P2F (White) and B08PC61M49 (Black) on the Amazon.com marketplace.

18. Plaintiff is the exclusive manufacturer of the Dara and does not sell the Dara to any third-party distributors or re-sellers.

19. Plaintiff developed a proprietary mobile application which works in conjunction with the Dara. The application measures over a dozen body composition metrics such as body fat percentage, BMR, bone mass, fat mass, BMI, body age, protein rate and muscle rate. These metrics are accessible only through the mobile application.

20. The mobile application can be accessed only by purchasing a genuine Dara from Plaintiff. When the user connects the scale to the application for the first time, the application's software uses Bluetooth technology to capture the serial number of the scale. Only scales manufactured by Plaintiff can connect to the application. Counterfeit scales like those sold by Defendants have un-recognizable serial numbers. The software will not allow the application to connect with a scale bearing an unrecognizable serial number. A user who purchases a counterfeit scale can never access the application.

21. To promote and protect its brand, Plaintiff registered the "FitTrack" trademark with the United States Patent and Trademark Office (Registration No. 5934408). The registration is valid and in full force and effect.

22. Pursuant to 15 U.S.C. § 1065, Plaintiff's trademark serves as conclusive evidence of Plaintiff's ownership of the mark and its exclusive right to use and direct the use of the mark in commerce and in connection with the sale and distribution of the Dara, as provided by 15 U.S.C. § 1115(b).

23. Plaintiff's trademark was registered on December 10, 2019. Plaintiff has actively used the trademark since that time.

24. Plaintiff has actively used, advertised, and marketed products under the trademark since the mark's registration.

25. Plaintiff has spent considerable resources marketing the Dara. Plaintiff has spent over $9,000,000 on Facebook advertisements. Plaintiff has spent over $350,000 on Tik Tok advertisements. Plaintiff has spent over $4,000,000 on Google advertisements. Plaintiff has spent over $1,200,000 on YouTube advertisements.

26. Plaintiff has sold over 1.7 million units of the Dara and there are approximately 1.1 million users actively using the mobile application.

27. Consumers recognize Plaintiff's trademark as being associated with an effective, reliable, and high-quality digital scale that works in concert with a mobile application providing reliable fitness and performance metrics.

28. Plaintiff's trademark is widely recognized by the general consuming public as the source of products bearing the FitTrack trademark.

29. Due to the superior quality and exclusive distribution of the Dara, and because Plaintiff is uniquely recognized as the source of the FitTrack brand, the FitTrack trademark has substantial value.

**Online Marketplaces Present Significant Challenges to Product Quality**

30. E-commerce retail sales have exploded over the past decade. From Q2 2011 to Q2 2021, the percentage of total retail sales in the United States that were completed through ecommerce channels rose from 4.8% to 13.3%. *See Federal Reserve Bank of St. Louis, Ecommerce Retail Sales as a Percent of Total Sales* (August 19, 2021), https://fred.stlouisfed.org/series/ECOMPCTSA.

31. In 2020 consumers spent nearly $800 billion online with U.S. merchants, up more than 32% from the year before. *See Digital Commerce 360, U.S. ecommerce sales grow 32.4% in 2020* (Feb. 19, 2020), https://www.digitalcommerce360.com/article/us-ecommerce-sales/. This massive growth is being driven largely by the growth of online marketplaces. Amazon alone accounts for 38.3% of online retail, or over $300 billion in sales per year. Amazon's dominance over e-commerce will only increase as consumers shift their purchasing habits from traditional brick-and-mortar stores to online marketplaces.

32. While online marketplaces have created a great deal of opportunity, they also greatly challenge a manufacturer's ability to control the quality of its products.

33. Many online marketplaces, including Amazon, allow third parties to sell products with little vetting or authorization from brands or manufacturers. As such, any person or entity that can obtain products through unauthorized diversions or from illegitimate sources can sell their products on online marketplaces without following the manufacturer's quality controls, and in many cases, without complying with intellectual property laws.

34. It is common for unauthorized sellers to sell diverted and counterfeit products to unwitting consumers. *See CNBC, Greed Report: Your quest for savings could land you in the 'gray market'* (Sep. 8, 2016), https://www.cnbc.com/2016/09/08/greed-report-your-quest-forsavings-could-land-you-in-the-gray-market.html.

35. Online marketplaces like Amazon do not generally require third party sellers to prove the source and authenticity of goods before the goods are offered for sale. This allows counterfeiters to identify successful products/brands and piggy-back onto those listings by offering counterfeit products sourced from unauthorized/unverifiable sources – often at a fraction of the cost.

36. That is precisely what Plaintiff seeks to stop. Defendants, a group of counterfeiters, identified a successful product/brand – the Dara/FitTrack. Defendants sought to exploit an existing and successful product by sourcing and offering for sale counterfeit/unauthorized reproductions of the Dara, thereby infringing on Plaintiff's intellectual property rights and harming the consuming public.

37. Third-party sellers on Amazon frequently sell counterfeit items or allow counterfeit items to enter the stream of commerce through the absence of supplier vetting, poor quality controls, inadequate sourcing, and deficient fulfillment practices.

38. The Department of Homeland Security recently published a report noting that online marketplaces can facilitate the sale of counterfeit goods and that "American consumers shopping on e-commerce platforms and online third-party marketplaces now face a significant risk of purchasing counterfeit or pirated goods." *Department of Homeland Security, Combating Trafficking in Counterfeit and Pirated Goods* (Jan. 24, 2020), available at https://www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goodsreport_01.pdf, at 7. The report stated that consumers on online marketplaces cannot rely on traditional "red flag" indicators of counterfeits and "have been surprised to discover that upon completion of an online sales transaction, that the order will be fulfilled by an unknown third-party seller." *Id*. at 14-15, 38. To mitigate these problems, the report recommended "[s]ignificantly enhanced vetting of third-party sellers." *Id*. at 35.

39. The United States Senate Finance Committee published a Bipartisan Staff Report on the problem of counterfeit products on online marketplaces, noting that brands "have experienced a steady increase in the amount of infringing products sold online" and that marketplace "business practices" such as commingling inventory contribute to the problem. *Senate Finance Committee, The Fight Against Fakes* (Nov. 7, 2019), available at: https://www.finance.senate.gov/imo/media/doc/The%20Fight%20Against%20Fakes%20%20(2019-11-07).pdf, at 6-9.

40. The press has also reported an "epidemic" of counterfeit products being sold on the online marketplaces that diverters are exploiting because they know consumers trust these marketplaces and think that the products they are buying through these marketplaces are genuine. *See Bloomberg, Amazon Gets Real About Fakes* (Nov. 28. 2016), https://www.bloomberg.com/news/articles/2016-11-28/amazon-gets-real-about-fakes.

41. In its 2018 annual report to its shareholders, Amazon admitted that third party sellers on its marketplace are selling products that are "counterfeit," "pirated," "stolen," or otherwise "materially different" from the product that was described to consumers. *Amazon.com, Inc., Annual Report (Form 10-K), at 14* (Jan. 31, 2019), available at https://www.sec.gov/Archives/edgar/data/1018724/000101872419000004/amzn-20181231x10k.htm. Amazon conceded that these actions are "violating the proprietary rights of others," and warned its investors that Amazon "could be liable for fraudulent or unlawful activities" of Amazon third-party sellers.

42. Because counterfeiters like Defendants, have no contractual relationship with manufacturers, manufacturers have no ability to exercise their quality controls over the counterfeit products or to ensure that only authentic, genuine products that come with all the product benefits are shipped to consumers. A manufacturer's inability to exercise control over the quality of its products presents serious risks that consumers will receive inauthentic or otherwise poor-quality products and then blame the brand.

43. Online marketplaces also threaten a manufacturer's ability to maintain its goodwill, reputation, and brand integrity because their construction and user interface obscure the identity of

the specific seller and suggest that all sellers are selling the same product when they are not. When purchasing products on an online marketplace, customers cannot easily distinguish between a manufacturer's authorized and unauthorized sellers. Indeed, on some marketplaces such as Amazon, all sellers of a product are put on the same listing and their identities are inconspicuous.

44. When a customer purchases a product on an online marketplace and receives a poor-quality or defective product, the customer is much more likely to associate that problem with the brand than the seller.

45. Online marketplaces also give disgruntled customers a powerful and convenient forum to air their grievances about problem products—online product reviews. Any consumer who is dissatisfied with the product received can post a review on the marketplace for all other consumers across the world to see. These reviews, which are often permanently fixed, will often criticize the brand rather than the marketplace seller that sold the product.

46. Online product reviews significantly impact a brand's reputation. Survey results show that 82% of United States adults sometimes consult online reviews for information when they consider buying a new product online, and 40% always or almost always consult such reviews. *See Pew Research Center, Online Shopping and E-Commerce: 2. Online Reviews* (Dec.19, 2016), http://www.pewinternet.org/2016/12/19/online-reviews/.

47. Because consumers so heavily "rely on reviews when they're shopping online," the Federal Trade Commission has even begun suing companies that post fake reviews of their products on online marketplaces. *See Federal Trade Commission, FTC Brings First Case Challenging Fake Paid Reviews on an Independent Retail Website* (Feb. 26, 2019), https://www.ftc.gov/news-events/press-releases/2019/02/ftc-brings-first-case-challenging-fakepaid-reviews-independent.

48. Reviews are especially impactful on online consumers. In a brick-and-mortar store, a consumer can simply select another product from the shelf if the initial product selected appears to be compromised. However, online consumers are left simply having to hope that the product that shows up on their doorstep is of appropriate quality. Therefore, online consumers rely more on brand reputation and reviews.

49. Negative reviews also hurt a brand's placement in search results on Amazon and other search engines, as Amazon's search algorithm downgrades products it believes consumers are less likely to buy. Thus, poor reviews can create a downward spiral where downgraded search placement leads to reduced sales, which leads to search placement falling further.

50. Consumers who purchase from counterfeit/unauthorized sellers on online marketplaces frequently receive poor-quality products and leave negative reviews on the product listing. These negative reviews injure consumer perceptions of the brand's quality and reputation, as well as its placement in search results, causing the brand to suffer damage to its goodwill and lost sales.

51. An audit of customer reviews on Amazon reveals a plethora of negative customer feedback towards Plaintiff's product and application. Unfortunately, Amazon customers do not realize they have purchased a counterfeit scale which cannot connect to Plaintiff's mobile application. As a result, Amazon customers attribute the issue towards the FitTrack brand as opposed to the sellers offering counterfeit products:

**Plaintiff has Implemented Strict Quality Controls to Combat the Problems Presented in Online Marketplaces and to Protect the Value of the FitTrack Trademark**

52. Recognizing the risks to its consumers and the reputational concerns associated with the illegal sale of FitTrack products by counterfeit/unauthorized sellers, Plaintiff has implemented a quality control program that seeks to protect consumers, the value, and goodwill associated with the FitTrack brand.

53. The goal of this program is to ensure that consumers who buy Plaintiff's products receive products that feature all the special characteristics that consumers have come to expect from products sold under the FitTrack name.

54. The program seeks to eliminate the likelihood that counterfeit products will reach consumers, which minimizes harm to the brand's goodwill. Preventing consumers from receiving counterfeit products protects consumers from confusion and protects the value and goodwill associated with the FitTrack brand.

55. Plaintiff's ability to exercise these quality controls is essential to the integrity and quality of its products, as well as the value of the FitTrack trademark and other intellectual property.

56. Plaintiff maintains strict quality controls over the FitTrack brand by conducting all sales through its website or through its Amazon webstore. Plaintiff sells directly to consumers and does not sell to any third-party distributors or re-sellers.

57. Plaintiff also maintains strict quality controls by ensuring its scales are the only ones that can connect to the mobile application. Counterfeit scales cannot connect to the mobile application because the software will not allow the application to connect to a scale with an unrecognizable serial number.

58. Following the sale of genuine products, Plaintiff provides ongoing support to end-user consumers and provides expeditious customer service by responding promptly to consumer inquiries.

59. Plaintiff's quality control requirements are legitimate and substantial and have been implemented so that Plaintiff can control the quality of goods manufactured and sold under the FitTrack trademark, to protect consumers, as well as the value and goodwill associated with the FitTrack trademark.

60. Plaintiff offers a limited warranty for all genuine Dara scales. This warranty is material and something consumers reasonably expect to receive from a technology product. Because Plaintiff sells exclusively directly to consumers, its warranty is limited to end users. Anyone seeking to service their Dara product must provide the serial number and proof of purchase. An invalid serial number or proof of purchase from any source other than Plaintiff's website or Amazon webstore invalidates any claims under Plaintiff's warranty. Since Defendants offer counterfeit scales, these scales are not eligible for service under Plaintiff's limited warranty.

61. Since Defendants' counterfeit scales are not compatible with Plaintiff's mobile application, and the counterfeit scales are not eligible for service under Plaintiff's limited warranty, the scales offered by Defendants are materially different from genuine scales offered by Plaintiff. Consumers therefore do not receive the full benefit of their bargain.

62. Plaintiff conducts regular audits of its Amazon listings. This is done to maintain the quality and reputation of the FitTrack brand.

63. In the course of monitoring its Amazon listings, Plaintiff discovered a high volume of unrecognized and unauthorized sellers purporting to sell genuine FitTrack products. These sellers do not and cannot sell genuine Dara products because Plaintiff sells exclusively direct to consumer and does not sell any products to third party distributors or re-sellers.

64. In addition to selling counterfeit products, these sellers do not comply with Plaintiff's customer service requirements because these sellers are not qualified or trained to accurately describe, demonstrate, sell and service the Dara or to advise customers how to use the Dara or the mobile application.

65. Because Defendants fail to abide by Plaintiff's quality controls and customer service requirements, and because Defendants have not sourced their products from Plaintiff, the products sold by Defendants are materially different from genuine FitTrack products.

66. Defendants' sale of products bearing the FitTrack trademark creates customer confusion because customers who purchase products from Defendants believe they are purchasing genuine FitTrack products when they are not.

67. Defendants' sale of counterfeit products bearing the FitTrack trademark infringes on the FitTrack trademark and diminishes the brand's value.

68. When a consumer receives a counterfeit product from unauthorized sellers such as Defendants, the consumer associates their negative experience with Plaintiff. As such, Defendants' ongoing sale of counterfeit/unauthorized products bearing the FitTrack trademarks harms the FitTrack brand.

69. Plaintiff has suffered, and will continue to suffer, significant monetary harm as a result of Defendants' actions including, but not limited to, loss of sales, damage to its intellectual property, and damage to its existing and potential business relations.

70. Plaintiff has suffered, and will continue to suffer, irreparable harm as a result of Defendants' actions, including, but not limited to, irreparable harm to its reputation, goodwill, business and customer relationships, intellectual property rights, and brand integrity.

71.     Plaintiff is entitled to injunctive relief because, unless enjoined by this Court, Defendants will continue to unlawfully sell counterfeit products, causing continued irreparable harm to Plaintiff's reputation, goodwill, relationships, intellectual property, and brand integrity.

72.     Defendants' conduct was, and is, knowing, reckless, intentional, willful, malicious, wanton, and contrary to law.

73.     Defendants' willful violations of the FitTrack trademark and continued pattern of misconduct demonstrates intent to harm Plaintiff.

74.     As set forth above, the counterfeit products bearing the FitTrack trademark through unauthorized sellers such as Defendants has caused significant harm to the FitTrack brand.

## FIRST CAUSE OF ACTION

**(Federal Trademark Infringement under 15 U.S.C. §§ 1114 and 1125(a) against all Defendants)**

75.     Plaintiff realleges and incorporates herein the allegations contained in paragraphs by 1 through 74 of this Complaint.

76.     The actions of Defendants described above and specifically, without limitation, their unauthorized use of the FitTrack trademark in commerce to advertise, promote, market, and sell products throughout the United States including California, constitute trademark infringement in violation of 15 U.S.C. §§ 1114 and 1125(a).

77.     The actions of Defendants, if not enjoined, will continue. Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the FitTrack trademark, and injury to Plaintiff's business. Plaintiff is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

78.     Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to recover damages in an amount to be determined at trial, profits made by Defendants on sales of counterfeit products, and the costs of this action. Furthermore, Plaintiff is informed and believes, and on that basis alleges, that the actions of Defendants were undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Plaintiff to recover additional treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

**(Federal Trademark Dilution under 15 U.S.C. §1125(c) against all Defendants)**

79. Plaintiff realleges and incorporates herein the allegations contained in paragraphs by 1 through 78 of this Complaint.

80. The actions of Defendants described above and specifically, without limitation, their unauthorized use of the FitTrack trademark in commerce to advertise, market, and sell counterfeit products throughout the United States including California, are likely to cause dilution by blurring and tarnishment in violation of 15 U.S.C. § 1125(c).

81. The actions of Defendants, if not enjoined, will continue. Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the FitTrack trademark, and injury to Plaintiff's business. Plaintiff is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116 and 15 U.S.C. 1125(c).

82. On information and belief, the actions of Defendants described above were and continue to be deliberate and willful. Plaintiff is therefore entitled to recover damages in an amount to be determined at trial, profits made by Defendants on sales of counterfeit products, and the costs of this action pursuant to 15 U.S.C. § 1117.

## THIRD CAUSE OF ACTION

**(Federal Unfair Competition and False Advertising under 15 U.S.C. §1125(a) against all Defendants)**

83. Plaintiff realleges and incorporates herein the allegations contained in paragraphs by 1 through 82 of this Complaint.

84. Defendants' actions described above and specifically, without limitation, Defendants' use of the FitTrack trademark, in commerce to advertise, market, and sell counterfeit products throughout the United States including California constitutes unfair competition and false advertising in violation of 15 U.S.C. § 1125(a).

85. Consumers are likely to be misled and deceived by Defendants' representations regarding the source and authenticity of the goods.

86. Defendants knew or should have known their statements are false or likely to mislead.

87. As an actual and proximate result of Defendants' willful and intentional actions, Plaintiff has suffered damages in an amount to be determined at trial, and unless Defendants are enjoined, Plaintiff will continue to suffer irreparable harm and damage to its business, reputation, and goodwill.

88. Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to damages for Defendants' Lanham Act violations, an accounting for profits made by Defendants on sales of counterfeit products, as well as recovery of the costs of this action. Furthermore, Plaintiff is informed and believes, and on that basis alleges, that Defendants' conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case entitling Plaintiff to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## FOURTH CAUSE OF ACTION

**(Statutory Unfair Competition and False Advertising under California Business and Professions Code §§ 17200 and 17500 *et seq.* against all Defendants)**

89. Plaintiff realleges and incorporates herein the allegations contained in paragraphs by 1 through 88 of this Complaint.

90. Defendants' actions described above and specifically, without limitation, Defendants' use of the FitTrack trademark in commerce to advertise, market, and sell counterfeit products throughout the United States and California constitutes trademark infringement, false advertising, and unfair competition in violation of the laws of the State of California.

91. By these actions, Defendants have engaged in false advertising and unfair competition in violation of the statutory law of the state of California, Cal. Bus. & Prof. Code §§ 17200 and 17500, et seq., and, as a result, Plaintiff has suffered and will continue to suffer damage to its business, reputation, and goodwill.

92. As a direct and proximate result of Defendants' willful and intentional actions, Plaintiff has suffered damages in an amount to be determined at trial and, unless Defendants are restrained, Plaintiff will continue to suffer irreparable damage.

## FIFTH CAUSE OF ACTION

### (Contributory Trademark Infringement against all Defendants)

93. Plaintiff realleges and incorporates herein the allegations contained in paragraphs by 1 through 92 of this Complaint.

94. The actions of Defendants described above and specifically, without limitation, their knowledge, participation, and inducement of the unauthorized use of the FitTrack trademark in commerce to advertise, market, and sell counterfeit products throughout the United States and California, constitute contributory trademark infringement in violation of federal law and the common law of the State of California.

95. The actions of Defendants, if not enjoined, will continue. Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the FitTrack trademark, and injury to Plaintiff's business.

96. On information and belief, the actions of Defendants described above were and continue to be deliberate and willful.

## SIXTH CAUSE OF ACTION

### (Vicarious Trademark Infringement against all Defendants)

97. Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 96 of this Complaint.

98. The actions of Defendants described above and specifically, without limitation, their knowledge, participation, and inducement of the unauthorized use of the FitTrack trademark in commerce to advertise, market, and sell counterfeit products throughout the United States and California, constitute vicarious trademark infringement in violation of federal law and the common law of the State of California. Defendants each have the ability to control the actions of the other

Defendants, fund the advertising activities of the other Defendants, and derive a direct financial benefit from the illegal acts of the other Defendants.

99. The actions of Defendants, if not enjoined, will continue. Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the FitTrack trademark, and injury to Plaintiff's business.

100. On information and belief, the actions of Defendants described above were and continue to be deliberate and willful.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendants as follows:

A. That Plaintiff be granted injunctive relief under 15 U.S.C. § 1051 et seq.; California Business and Professions Code §§ 17200 and 17500 et seq.; and federal law and California common law of contributory trademark infringement and vicarious trademark infringement; specifically, that Defendants and all of their respective officers, agents, servants, representatives, employees, attorneys, and all other persons acting in concert with them be enjoined from:

    1. Selling any counterfeit products or products bearing the FitTrack trademark;

    2. Using the FitTrack trademark, or any confusingly similar mark, in connection with the marketing promotion, advertising, sale, or distribution of any products bearing the FitTrack trademark;

    3. Directly or indirectly engaging in false advertising or promotions of FitTrack products;

    4. making or inducing others to make any false, misleading or deceptive statement of fact, or representation of fact in connection with the promotion, advertisement, packaging, display, sale, offering for sale, manufacture, production, circulation or distribution of FitTrack products;

B. That Defendants file, within ten (10) days from entry of an injunction, a declaration with this Court signed under penalty of perjury certifying the manner in which Defendants have complied with the terms of the injunction;

C. That Defendants be adjudged to have violated 15 U.S.C. § 1125(a) by unfairly competing against Plaintiff by using false, deceptive or misleading descriptions or representations of fact that misrepresent the nature, quality and characteristics of the counterfeit products sold by them;

D. That Defendants be adjudged to unlawfully and unfairly compete against Plaintiff under the laws of the State of California, Cal. Bus. & Prof. Code § 17200, *et seq.*;

E. That Defendants be adjudged to have competed unlawfully and unfairly against Plaintiff by engaging in false or misleading advertising under the laws of the State of California, Cal. Bus. & Prof. Code § 17500, *et seq.*;

F. That Plaintiff be awarded damages pursuant to 15 U.S.C. § 1117(a), sufficient to compensate it for the damage caused by Defendants' false and misleading statements;

G. That Plaintiff be awarded Defendants' profits derived by reason of said acts, or as determined by said accounting;

H. That such damages and profits be trebled and awarded to Plaintiff and that it be awarded its costs, attorneys' fees and expenses in this suit under 15 U.S.C. § 1117, as a result of Defendants' willful, intentional, and deliberate acts in violation of the Lanham Act;

I. That Plaintiff be awarded damages in an amount sufficient to compensate it for the damage caused by Defendants' unfair competition and false advertising under California Business and Professions Code §§ 17200 and 17500 et seq. and contributory trademark infringement and vicarious trademark infringement under federal law and California common law;

J. That Plaintiff be granted prejudgment and post judgment interest;

K. That Plaintiff be awarded punitive damages stemming from Defendants' intentional, wanton and/or reckless sale of counterfeit products bearing the FitTrack trademark;

L. That Plaintiff be granted costs associated with the prosecution of this action; and

M. That Plaintiff be granted such further relief as the Court may deem just.

| | | |
|---|---|---|
| 1 | Dated: May 8, 2023 | **AMAZON SUSPENSION LAWYER** |
| 2 | | By: */s/ Leo A. Vaisburg* |
| 3 | | Leo A. Vaisburg, Esq.<br>Attorney for Plaintiff |
| 4 | | FitTrack, Inc.<br>Email: leo@amazonsuspensionlawyer.com |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28